On Rehearing
LE BLANC, Justice.
This is the sixth time this case has received consideration by the Courts in which it has appeared. It was initially tried and decided in the district court where it was. *633 reconsidered on a motion for re-hearing. It was appealed to and decided by the Court of Appeal for the Parish of Orleans where again a motion for re-hearing was considered and acted on and then the judgment of that Court was reviewed on writs granted by this Court. In each instance the decision of each Court was unfavorable to the plaintiff with only two of the justices of this Court disagreeing. Industrious counsel have succeeded in obtaining a rehearing on which the case has been resubmitted. After such thorough consideration, it would seem that there is little more to be added to all that has been said unless this Court be now convinced of error all the way through, up to now, and there necessarily should be a reversal of all the judgments heretofore rendered.
All of this does not mean, of course, that we have not again given careful consideration to the case. After having done so however we find that all the points and issues presented are the same as have been urged throughout the various stages as it progressed through the different Courts and we still fail to find that manifest error has been committed in applying the facts to the particular rule of law that is involved. The facts are not seriously disputed and the law is rather simple.
We might mention, as was stated in the original opinion, that there was a disagreement between the district judge and the Court of Appeal with regard to the applicability of the doctrine of res ipsa loquitur but, as also intimated in the opinion, the applicability of that rule was not of grave importance in considering the facts of the case in the light of the jurisprudence of this State in cases of this kind! That jurisprudence as pointed out in the original opinion is that the law only exacts of physicians, surgeons and dentists that degree of skill and care which is usually possessed and exercised by practitioners of their profession in the same locality or community and makes it their duty to use reasonable care and diligence, alpng with their best judgment, in the application of their skill to the case before them. Regardless of what the jurisprudence may be in other jurisdictions, this Court and the Courts of Appeal of the State have adopted the rule as stated as is made apparent in the several cases cited in the original opinion.
The rule makes it incumbent on the physician, surgeon or dentist who becomes defendant in a malpractice case to show that he is possessed of the required skill and competence indicated and that in applying that skill to the given case he used reasonable care and diligence along with his best judgment. The rule therefore may be said to bear some relation to the doctrine of res ipsa loquitur which places the burden on a defendant having control of the dangerous instrumentality which caused an accident to show his freedom from negligence in a case where such accident would not ordinarily have occurred had proper *635 •care and use been made of the instrumentality. As stated by the Court of Appeal in its opinion in this case, however, that does not mean that the defendant must show just •what was the cause of the occurrence.
In this case the rule may well apply to the anerthetist, Dr. Evelyn Katz as she was the one handling the dangerous instrumentality which came in contact with the plaintiff’s upper teeth and allegedly caused one to become dislodged. But Dr. Leopold Levy, the operating oral surgeon, had nothing to do with the instrument; it never was under his control, and we fail to see why he should be called on to exculpate himself from negligence in the use •of it. As to him it would seem that liability would have to be determined on some other ground and that in order to free himself he would haye to show the skill required under the rule and that in preparing for the extraction of plaintiff’s teeth he exercised reasonable care and diligence and used his best judgment.
Both Dr. Katz and Dr. Levy are admittedly practitioners of high standing in their respective fields. Dr. John A. Adriani, a recognized authority on the subject •of anesthesia, expressed the opinion that Dr. Katz was an expert in that particular branch of medicine and stated that she has all the qualifications necessary. She is the head of the Department of Anesthesia at Hotel Dieu and has eight nurses working under her. The administering of anesthesia, as had to be done in this case, is an intricate and rather complex procedure. It requires the utmost attention of the anesthetist who has to manipulate the instrument, an accepted model of laryngoscope such as was used in this case and which is bound to come in contact with the teeth, according to Dr. Adriani’s expert testimony. Significantly this expert also states that an accident such as happened may take place in spite of the use of the most extreme care and he considers himself fortunate that it hasn’t happened to him. That, it strikes us, goes a long way in disposing of the question of the foreseeability of such an occurrence, a point so strongly urged by counsel for plaintiff.
There is nothing found in the record of this case to show that Dr. Katz did not use the proper and usual technique and employ the same skill as other practitioners in her field, in handling the instrument she was required to use in administering to this patient and no one, we surmise from her testimony, was more surprised than she when it was discovered that a tooth in the patient’s mouth had been dislodged.
It is argued again that Dr. Katz had the duty of taking the extra precaution, even beyond her usual skill, of examining the patient’s mouth to find out if there were any loose teeth which might be dislodged by coming in contact with the laryngoscope, but Dr. Katz testified that she did observe the teeth and, apparently, she must have considered it proper after such observation as she made, to insert the *637 instrument in the patient’s mouth. In doing this she used her best judgment and followed what was the accepted method of procedure. That, as we have seen, was the obligation imposed on her under the rule of law which governed the case. Moreover, in considering this point, the testimony is to the effect that the particular tooth which was involved in this accident, was not a loose tooth and this, we think, accentuates Dr. Adriani’s expert testimony that such an occurrence may take place despite the exercise of the most extreme care.
Dr. Levy is also charged with negligence in not having examined plaintiff’s teeth before the anesthesia was administered. But Dr. Levy was the oral surgeon to whom plaintiff had been recommended and sent by her own dentist for the purpose of extracting all her teeth. Her dentist who had had her under observation was familiar with her condition and apparently he did not think it was necessary for himself to take or advise the taking of precautions such as Dr. Katz and Dr. Levy are both being charged with negligently having failed to take. If the patient was sent to Dr. Levy for the extraction of all her teeth, which operation was to be done under complete anesthesia, we cannot see how he was remiss in his duty in failing to extract one or more teeth before the administration of the anesthesia.
It is again urged that Dr. Levy should have remained by the side of the patient when the anesthesia was being given and, as we further understand, should have in some way directed the anesthetist in the procedure. But, as stated by the Court of Appeal, Dr. Levy’s testimony and the record is convincing, that it is not customary for a surgeon, or an oral surgeon,, to remain by the side of the patient when the anesthetic is being administered. We think that point is fully covered in the opinion of the Court of Appeal and what more we would say on it would only be in the nature of repetition.
We reaffirm our views and the conclusions reached on the original hearing and for the further reasons herein stated,
It is now ordered that the former judgment and decree herein rendered be made final.
FOURNET, C. J., concurs in the decree-
PONDER, J., dissents.
McCALEB, J., dissents adhering to the views he has heretofore expressed.
MOISE, J., dissents and has assigned! written reasons.
On Rehearing